■ KENNETH HELLER, Respondent-Appellant, v LOUIS PROVENZANO, INC., et al., Appellants-Respondents. [683 NYS2d 92]

—Order, Supreme Court, New York County (Norman Ryp, J.), entered March 13, 1997, which, *inter alia*, granted defendants' motion pursuant to CPLR 4404 (a) and 5015 (a) to the extent of directing that there be a new trial as to damages unless plaintiff stipulated to a reduction of the jury verdict and imposing sanctions upon the plaintiff in the amount of $10,000, modified, on the law, the facts and in the exercise of discretion, defendant's motion granted to the extent of ordering a new trial on liability and damages and remanding the case to the Administrative Judge, County of New York, for reassignment to a Trial Judge, and the order otherwise affirmed, without costs and disbursements.

In this action for personal injuries sustained when plaintiff fell as he exited the freight elevator in defendant's parking garage, we remand for a new trial because of the serious misconduct—both before and during trial—of plaintiff and plaintiff's attorney. Mr. Heller's behavior included entering the jury selection room prior to trial, without either counsel present, and speaking with prospective jurors,* wandering around the courtroom during the trial, ignoring the warnings of the Trial Judge to refrain from testifying as to an unrelated fatal accident in the same elevator and, in an attempt to curry favor with Hispanic members of the jury, making it clear that his wife was Hispanic and volunteering that he speaks Spanish fluently. As to the improper conduct of plaintiff's attorney, with no factual basis, he asked defendant's medical expert if it weren't "a fact that [he was] thrown out of NYU Medical Center" and, referring to the length of the medical examination the expert performed, said, "[T]hey call him three-minute Irving."

We are not persuaded that the cumulative effect of this conduct did not influence the jury's verdict in plaintiff's favor and therefore order a new trial. (*See*, *Caraballo v City of New York*, 86 AD2d 580.) Since we find the error to be fundamental, it would be a gross injustice to allow the verdict to stand and thus order a new trial even in the absence of a motion for mistrial. (*See, e.g.*, *Rivera v Bronx-Lebanon Hosp. Ctr.*, 70 AD2d 794; *Breitung v Canzano*, 238 AD2d 901; *Bagailuk v Weiss*, 110 AD2d 284.)

Finally, we note that the sanction imposed by the trial court, a relatively mild one, should not be disturbed. Concur—Sullivan, J. P., Rosenberger, Wallach, and Mazzarelli, JJ.

Andrias, J., dissents in a memorandum as follows:

---

* He spoke to Hispanic members of the panel in Spanish.

Defendants-appellants seek a new trial based on the prejudicial conduct of plaintiff and his counsel. No one could argue that plaintiff, who is also an attorney, conducted himself in an appropriate manner. Plaintiff himself concedes on appeal that plaintiff and plaintiff's counsel "overstepped their proper bounds". If anything, this case file might be utilized in law school trial practice courses on how not to try a case.

Nevertheless, a number of issues are in dispute. Plaintiff denies that prior to jury selection he ever visited the jury assembly room on his own and spoke to prospective jurors. It should be noted that this charge was first raised by the defense four days into the trial after the defense consented to the jury as selected and long after any appropriate investigation could have been conducted by the Trial Judge. The charge that plaintiff somehow informed the jurors of the extent of insurance coverage is purely speculative and is negated by the fact that the defense concededly misrepresented the amount of coverage. As to several other issues, including plaintiff's wandering about the courtroom, the "repeated" references to a prior fatal accident in the same elevator shaft, and the negative references to defendant's medical expert, the defense considerably exaggerates their extent and likely overall effect. In each instance, the trial court promptly instructed the jury to disregard plaintiff's transgressions and gave appropriate curative instructions. One of the most egregious examples of plaintiff's conduct—a heated interchange where plaintiff threatened to report the Judge to the State Commission on Judicial Conduct—occurred *after* the jury had been excused.

In any event, it is unnecessary to resolve the exact nature and extent of plaintiff's misconduct. Defendant's post-trial request for a new trial must be rejected for the fundamental reason that it never sought one until *after* the verdict was rendered. Although the court itself suggested it might *sua sponte* grant a mistrial, the defense repeatedly declined to seek a mistrial prior to the verdict. Whether it believed it had a jury favorably disposed to it or that the jury itself would punish plaintiff for his misdeeds (as the court twice observed), the defense never once sought a mistrial. In effect, the defendant wanted it both ways. It is well-settled that a party may not be permitted to "speculate" upon the outcome of the jury verdict: "While unquestionably the testimony of plaintiff regarding the doctor was improper and prejudicial, that conclusion does not end the matter. The record demonstrates that defendants clearly waived their objection by not timely moving for a mistrial. Instead, although opportunity was given to defendants'

counsel to so move for a mistrial, defendants, for reasons best known to counsel, waited until after the verdict was rendered before making the motion. Counsel may not be permitted to speculate upon whether a verdict will be favorable, before asserting a claim for a mistrial. Such a motion must be made in advance of the verdict. (See *Collins* v. *Ward,* 240 App. Div. 985; *Hough* v. *Doersch,* 257 App. Div. 842, app. dism. 282 N. Y. 675.) Although we recognize that an experienced Trial Justice is in a favorable position properly to gauge the effect of a prejudicial error upon a jury's determination, and to grant a new trial in the interests of justice, we cannot permit counsel to press a challenged error after proceeding in a manner constituting a waiver of an objection." (*Schein v Chest Serv. Co.,* 38 AD2d 929; *accord, Virgo v Bonavilla,* 49 NY2d 982, 984 ["A party is not permitted to speculate upon a favorable verdict before asserting a claim that could properly be made during trial"]; *Kraemer v Zimmerman,* 249 AD2d 159).

The cases relied upon by my colleagues hardly support the granting of a new trial in the absence of a motion for a mistrial prior to verdict. *Bagailuk v Weiss* (110 AD2d 284, 287) is inapposite in that there the court noted that a motion for a mistrial was promptly made before the jury was even charged. In *Caraballo v City of New York* (86 AD2d 580), there is no indication that the defense failed to make a motion for a mistrial. *Rivera v Bronx-Lebanon Hosp. Ctr.* (70 AD2d 794) and *Breitung v Canzano* (238 AD2d 901) involved failure to object *to an erroneous charge* which precluded the jury's consideration of the central issue in the case.

Thus, while not endorsing any of the alleged or admitted transgressions involved here, defendants can be said to have charted their own course and should not now be heard to complain (*cf., McDonald v Northside Sav. Bank,* 184 AD2d 426, 427). Therefore, for the foregoing reasons, I would affirm.